IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NOEL MATOS MONTALVO** | : | Civil Action No. |
| **Plaintiff,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| | : | |
| **CITY OF YORK,** | : | |
| **DETECTIVE ROLAND COMACHO** | : | |
| **DETECTIVE LISA DANIELS, &** | : | |
| **PO JOHN DOE** | : | |
| **Defendants** | : | |

## COMPLAINT

### PRELIMINARY STATEMENT

1. In 1998, Plaintiff's brother, Milton, killed his longtime common-law wife. Plaintiff, Noel Matos Montalvo, was not involved in the killing. However, based on a coerced statement from one witness, Plaintiff was convicted and sentenced to death for taking part in the killing. Later, in December 2023, Plaintiff was exonerated of the killing and pled guilty to one count of Tampering with Evidence as a misdemeanor of the first degree. Plainttiff was in custody for the entire time period, giving rise to the instant matter. The statutory maximum on Tampering with Evidence as a misdemeanor of the first degree is five years; accordingly, Plaintiff seeks damages for the amount of time he was incarcerated over five years. City of York Detectives Camacho, Daniels, and Doe violated Plaintiff's constitutional rights, which caused Plaintiff to wrongly serve decades in prison on Pennsylvania's death row. Plaintiff brings this action under 42 U.S.C. §1983 seeking redress for the extraordinary misconduct of Defendants.

2. The actions and conduct of the defendant officers were the results of policies, practices, customs, and deliberate indifference on the part of Defendant City of York, including the

1

failure to properly train and supervise officers assigned to investigate homicides, and the failure to take disciplinary and remedial action against the defendant detectives and other police officers who commit serious misconduct and abuses of authority.

## JURISDICTION

3. This action is brought pursuant to 42 U.S.C. §1983. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343(1), (3), (4) and the aforementioned statutory provision.

## PARTIES

4. Plaintiff Noel Matos Montalvo was a resident of the City of York, Pennsylvania, and all events relevant to this action occurred in York County which is in the Middle District of Pennsylvania.

5. Defendant City of York is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs, and controls the City of York Police Department and the York County District Attorney's Office regarding it's cases, doing business at or near 50 W King St, York, PA 17401.

6. At all times relevant the City of York Police Department employed Defendants Roland Comacho, Lisa Daniels, and John Doe Officers.

7. Defendants Comacho, Daniels and Doe ("the defendant officers") were at all times relevant to this action police officers or detectives for the City of York Police Department acting under color of state law. The defendant officers are being sued in their individual capacities.

8. The designation "John Doe" is one of a fictious person or entity.

9. At all relevant times, all defendants were personally involved in violating Plaintiff's constitutional rights and acting in concert and conspiracy to deprive Plaintiff of his constitutional and statutory rights.

## FACTUAL ALLEGATIONS

10. In 1998, Plaintiff's brother Milton murdered his estranged common-law wife, Miriam Ascencio, and her new boyfriend, Nelson Lugo; and, in 2000, he was convicted and sentenced to death for the murders.

11. A neighbor found Ms. Ascencio and Mr. Lugo stabbed to death the morning after the couple had gone out together to a local bar.

12. DNA testing of over 70 items at the scene matched blood and hair to Milton but found no trace of Plaintiff.

13. Another neighbor saw Milton alone at Ms. Ascencio's door that night and heard him shouting, and did not mention Plaintiff in his statement to law enforcement.

14. Only one witness linked Plaintiff to the crime, testifying that he had told her he murdered Ms. Ascencio, but the witness admitted on cross-examination that a detective had threatened her with jail time if she didn't implicate Plaintiff.

15. Based upon information and belief, Defendants Comacho and Daniels coerced the witness to make the aforementioned statement.

16. Nonetheless, prosecutors later tried Plaintiff for the murders.

17. Based upon information and belief, Defendants Comacho and Daniels testified at trial against Plaintiff, even though they knew or should have known he was not involved in the murders.

18. Based upon information and belief Defendant Daniels read the abovementioned coerced statement into the record at Plaintiff's criminal jury trial, knowing the statement to be false.

19. Plaintiff was never involved in the murder.

20. In 2003, Plaintiff was convicted of murder and he was sentenced to death.

21. In 2017, Milton received relief in his case when a court granted a new penalty phase based on ineffective assistance of counsel, but he died in 2021 before resentencing.

22. In 2019, a judge overturned Plaintiff's conviction and sentence, and ordered a new trial.

23. In 2021, the Pennsylvania Supreme Court upheld the lower court's ruling to overturning the verdict in Plaintiff's case.

24. The physical evidence was retested multiple times over the years by experts definitively excluded Plaintiff.

25. Instead of pursuing a new trial for Plaintiff, the Commonwealth and the Plaintiff eventually reached a plea agreement for his release.

26. Under the agreement, Plaintiff admitted only to leaving the state with his brother on the night of the murders.

27. On December 18, 2023, Defendant York County dropped all homicide charges against Plaintiff Noel Montalvo, twenty years after he was convicted and sentenced to death in York County.

28. Plaintiff served his time on death row, and charges related to the killing have been dismissed.

29. Plaintiff pled guilty to one count of tampering with evidence as a misdemeanor of the first degree in exchange for release and one year on probation.

30. The maximum on tampering with evidence in Pennsylvania is 5 years.

31. Plaintiff maintained his innocence for his entire incarceration.

32. Plaintiff claims damages for his entire period of incarceration less five year.

***The City of York Police Department's pattern and practice of unconstitutional misconduct in homicide investigations, including the fabrication of evidence, coercion and threats to secure false statements from witnesses and suspects, failure to conduct proper investigations, and suppression of exculpatory evidence.***

33. For many years dating back at least to the 1970's, and continuing well beyond the time of the investigation of instant matter, the City of York, had in force and effect a policy, practice, or custom of unconstitutional misconduct in their police department, including but not limited to homicide investigations, and in particular, using coercive techniques in interviews and interrogations to obtain incriminating evidence; fabricating inculpatory evidence; conducting improper identification procedures; concealing or withholding exculpatory evidence; tampering with or manufacturing evidence; and fabricating incriminating statements from witnesses, suspects, and arrestees.

34. This policy, practice, or custom involved the use of various techniques to coerce incriminating statements, including without limitation: isolation; separating juvenile or otherwise vulnerable suspects or witnesses from friends and family; subjecting individuals to needlessly prolonged interrogations; making false promises, including the promise that a suspect or witness will be allowed to go home if he or she makes an inculpatory statement and/or be given favorable treatment; the use or threat of physical violence; authoritative assertions of a suspect's guilt, including without limitation confrontation with false inculpatory evidence; and providing false assurances— including

to juveniles and other vulnerable people—that the suspect or witness will benefit from making an inculpatory statement that minimizes the suspect's own involvement.

35. These practices were well known to the City of York and its policymakers with respect to criminal investigations and prosecutions as a result of investigations going back to the 1970s. The investigations included governmental investigations, complaints from lawyers and civilians against City of York police, and internal police investigations.

36. Various cases and examples demonstrate that this misconduct was and is pervasive within the City of York Police Department; and, upon information and belief, the misconduct described below was committed with the knowledge of City of York Police Department supervisors or because of their deliberate indifference to this misconduct.

    a. In the City of York, Jacquez Brown was previously convicted of murder even though the evidence clearly pointed to self-defense, and there was a missing witness who was allegedly suppressed by the prosecutor who would have clearly made out self-defense. *See*

       *https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6127*

    b. In the City of York, Kevin Dowling was previously convicted of murder, which was overturned because the prosecutor withheld evidence regarding Dowling's whereabouts during the second part of the case. However, in 2024, the Pennsylvania Supreme Court overruled the lower court and reinstated the conviction, based on the third prong of the PCRA analysis under *Strickland v. Washington*, 466 U.S. 668 (1984), that the outcome of the case would have been the same regardless of the information withheld by prosecutors. The case was remanded back to the Court of Common Pleas of York County with instructions. Nonetheless, there was still

prosecutorial misconduct. *See https://deathpenaltyinfo.org/pennsylvania-court-finds-state-trooper-fabricated-evidence-awards-death-row-prisoner-kevin-dowling-new-trial; But see https://lancasteronline.com/news/local/pa-supreme-court-reverses-ruling-granting-former-east-petersburg-man-new-trial-in-1997-york/article_669b396a-2292-11ef-a82e-5bdd5b557ef9.html; https://www.ydr.com/story/news/2024/06/04/york-county-pa-killer-kevin-dowling-heads-back-to-death-row/73960636007/*

c. In the City of York, Joseph Bernard Fitzpatrick III was convicted of killing his wife where he argued she died in an accidental drowning in a lake. Prosecutors entered a letter into evidence where the victim said that if anything ever happened to her, it was Joe, knowing the letter was not admissible. In 2021, his conviction was overturned. *See https://www.yorkdispatch.com/story/news/crime/2021/07/23/pennsylvania-supreme-court-grants-convicted-killer-new-trial/8074413002/*

d. In *Preston v. City of York*, 452 F. Supp. 52 (M.D. Pa. 1978), residents of the city of York, Pennsylvania, brought a civil rights suit alleging racially motivated abuse by city police officers, claiming bias in policing and police practices against minorities in the City of York.

e. In *Snell v. City of York*, No. 4:06-CV-2133, 2007 WL 1412061, at *1 (M.D. Pa. May 10, 2007), *aff'd sub nom. Snell v. City Of York, Pennsylvania*, 564 F.3d 659 (3d Cir. 2009), the Plaintiff was protesting planned parenthood, Defendant Comacho used a trumped up Disorderly Conduct charge to arrest Snell, to quell his first amendment rights falsely, knowing that Disorderly Conduct is not a "catch all" offense in

7

    Pennsylvania. Based upon information and belief, Plaintiff believes the Comacho in *Snell* to be the same person as Defendant Comacho in the instant complaint.

    f.  Based upon information and belief, Defendant Comacho was also the subject of 42 USC 1983 litigation in the Middle District of Pennsylvania in *Gerace v. Comacho*, et al., 1:98-cv-00420-SHR, the facts of which are unknown to Plaintiff.

    g.  In 1973, the City of York Police Department, including the Chief of Police, was investigated by authorities for corruption for accepting kickbacks and bribes regarding tow truck operators within the City of York. *See https://www.ojp.gov/ncjrs/virtual-library/abstracts/corruption-small-city-justice-and-corrections-1978-norman-johnston*

37. At the time of the investigation and prosecution of Mr. Matos Montalvo, the City of York Police Department had a policy, practice, or custom of detaining, arresting, and interrogating purported witnesses without legal cause and with the intent of coercing statements from these persons, under threat of punishment or other sanctions, and/or for material benefits. These detentions and interrogations were conducted without voluntary consent and without the benefit of advice of counsel, even where the purported witness and/or her attorney sought the right to consult.

38. This practice, as exemplified by the investigations in Mr. Matos Montalvo's case and those detailed above, continued for years due to the deliberate indifference of the City of York Police Department and the City of York to this policy, practice, and custom. Finally, over twenty years later, after further proof of this policy, practice, and custom was provided to the City of York, the City of York Police Department, the York District Attorney, admitted to the police misconduct.

39. During the timeframe of the investigation of the instant case by the City of York Police Department, there was within the Department a pattern, practice, and custom of violating the constitutional rights of criminal suspects and others, including systemic violations of the Fourth and Fourteenth Amendments.

40. In summary, at the time of the investigation and prosecution of Mr. Matos Montalvo, the City of York had a practice, policy, and custom of:

    a. Engaging in unlawful interrogation of suspects, using coercion and threats during interrogations, unlawful witness detentions and interrogations, fabricating and planting evidence, fabricating witness and suspect statements, using improper identification procedures, and concealing and/or failing to disclose exculpatory evidence;

    b. Failing to take appropriate disciplinary or other corrective actions with respect to police officers who engaged in illegal or unconstitutional conduct and/or violate generally accepted police practices;

    c. Failing to properly train and supervise officers with respect to the constitutional limitations on their investigative, detention, search and arrest powers;

    d. Ignoring, with deliberate indifference, systemic patterns of police misconduct and abuse of civilians' rights in the course of police investigations and prosecutions of criminal suspects and defendants, including unlawful police interrogations, searches, and arrests, coercion of witnesses, improper identification procedures, falsifying and fabricating evidence, and suppressing exculpatory evidence; and

    e. Failing to properly sanction or discipline PPD officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of individuals by other PPD

officers, thereby causing and encouraging City of York police, including the defendant officers in this case, to violate the rights of citizens such as Mr. Matos Montalvo.

41. At the time of the investigation and prosecution of Mr. Matos Montalvo, and for many years before and thereafter, the City of York Police and the City of York have been deliberately indifferent to the need to train, supervise, and discipline police officers. The Internal Affairs Division (IAD) of the York has failed to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

   a. excessive and chronic delays in resolving disciplinary complaints;

   b. a lack of consistent, rational and meaningful disciplinary and remedial actions;

   c. a failure to effectively discipline substantial numbers of officers who were found to have engaged in misconduct;

   d. the City of York's Police internal investigatory process fell below accepted practices and was arbitrary and inconsistent;

   e. the City of York's Police discipline, as practiced, was incident-based rather than progressive; thus, repeat violators were not penalized in proportion to the number of violations;

   f. the conduct of IAD investigations demonstrated that City of York's Police internal affairs personnel were not adequately trained and supervised in the proper conduct of such investigations;

g. a global analysis of IAD's investigatory procedures indicated a pattern of administrative conduct where the benefit of the doubt was given to the officer rather than the complainant;

h. serious deficiencies in the quality of IAD investigations and the validity of the IAD findings and conclusions;

i. lack of an effective early warning system to identify, track, and monitor "problem" officers;

j. IAD frequently failed to interview available eyewitnesses to incidents involving citizen complaints of misconduct; interviews that were conducted were below acceptable standards of police practice and failed to address key issues; and

k. IAD failed to acknowledge the disproportionate and extreme use of force used by police officers in the investigation of citizen complaints and failed to properly categorize the police officers' misconduct in those cases as an impermissible use of force.

**COUNT I: 42 U.S.C. § 1983**
**DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW AND DENIAL OF A FAIR TRIAL UNDER THE FOURTH, FOURTEENTH AND EIGHTH AMENDMENTS**
**AGAINST ALL INDIVIDUAL DEFENDANTS**

42. Plaintiff incorporates by reference all the foregoing paragraphs.

43. The individual defendants, acting individually and in concert, and within the scope of their employment, deprived Mr. Matos Montalvo of his clearly established constitutional right to due process of law and to a fair trial when:

a. The defendant officers coerced a witness to testify against Plaintiff falsely.

b. The defendant officers fabricated probable cause for the arrest of Mr. Matos Montalvo.

    c. The defendant officers falsely testified against Plaintiff.

    d. The defendant officers and/or Defendants Comacho, Daniels and/or Doe(s) deliberately deceived counsel and the court by concealing and/or suppressing relevant and material evidence about the case, and or knowingly coercing false statements from witnesses.

44. The individual defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Matos Montalvo's clearly established constitutional rights. No reasonable officer or attorney at the time the instant matter was on trial for the aforementioned crime would have believed this conduct was lawful.

45. Defendants' acts and omissions, as described above, were the direct and proximate cause of Mr. Matos Montalvo's injuries. Defendants knew, or should have known, that their conduct would result in Mr. Matos Montalvo's wrongful trial at which he faced the death penalty, and the harms he sustained as a direct result.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages against all defendants except municipal defendants, delay damages, attorneys fees, and allowable costs of suit and brings this action to recover same.

### COUNT II: 42 U.S.C. §1983
### CIVIL RIGHTS CONSPIRACY
### AGAINST ALL INDIVIDUAL DEFENDANTS

46. Plaintiff incorporates by reference all the foregoing paragraphs.

47. The individual defendants, acting within the scope of their employment and under color of state law, agreed among themselves and with other individuals, to act in concert to

deprive Plaintiff of his clearly established Fourteenth Amendment rights to be free from deprivation of liberty without due process of law, and to a fair trial.

48. In furtherance of the conspiracy, the defendants engaged in and facilitated numerous overt acts.

49. Defendants' acts and omissions, as described above, were the direct and proximate cause of Mr. Matos Montalvo's injuries. Defendants knew, or should have known, that their conduct would result in Mr. Matos Montalvo's denial of due process and a fair trial.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages against all defendants except municipal defendants, delay damages, attorneys fees, and allowable costs of suit and brings this action to recover same.

## COUNT III: 42 U.S.C. § 1983
## FAILURE TO INTERVENE
## AGAINST ALL INDIVIDUAL DEFENDANTS

50. Plaintiff incorporates by reference all of the foregoing paragraphs.

51. By their conduct, under color of state law and acting within the scope of their employment with the City of York Police Department, the individual defendants had opportunities to intervene on behalf of Mr. Matos Montalvo to prevent the deprivation of liberty without due process of law and to ensure his right to a fair trial, but with deliberate indifference failed to do so.

52. The defendants' failures to intervene violated Mr. Matos Montalvo's clearly established constitutional right not to be deprived of liberty without due process of law and a fair trial as guaranteed by the Fourteenth Amendment. No reasonable police officer or attorney at the time of the prosecution of the instant matter would have believed that failing to

13

intervene to prevent these defendants from coercing and fabricating inculpatory evidence, using coercion and/or direct suggestion to obtain false witness statements, tampering with evidence, planting evidence, suppressing and concealing material evidence from Mr. Matos Montalvo and his trial counsel, failing to conduct a constitutionally adequate investigation, and causing Mr. Matos Montalvo to be subjected to an unfair trial, were lawful.

53. Defendants' acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Mr. Matos Montalvo's injuries. Defendants knew, or should have known, that their conduct would result in Mr. Matos Montalvo's unfair trial.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages against all defendants except municipal defendants, delay damages, attorneys fees, and allowable costs of suit and brings this action to recover same.

## COUNT IV: UNDER 42 U.S.C. § 1983
## UNCONSTITUTIONAL SEIZURE OF PERSON
## PLAINTIFF AGAINST INDIVIDUAL DEFENDANTS

54. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

55. Plaintiff did not commit any criminal offense related to his arrest, detention, and prosecution.

56. Defendant did not have any probable cause to believe the Plaintiff committed any criminal offense.

57. No reasonable police officer would believe probable cause existed to arrest the Plaintiff.

58. The Defendant intentionally, maliciously, and falsely arrested the Plaintiff with reckless disregard for Plaintiff's constitutional rights.

59. The false arrest and illegal seizure of the Plaintiff was a violation of his Fourth Amendment rights under the United States Constitution.

60. Defendants acted in concert and conspiracy with each other to deprive the Plaintiff of her liberty.

61. As a direct result of Defendants' intentional and malicious conduct, Plaintiff was seized and held on false criminal charges and suffered associated deprivations of liberty.

62. As a direct and proximate result of the Defendants' actions, Plaintiff suffered serious mental anguish, psychological and emotional distress, fear, anxiety, embarrassment, and the loss of the enjoyment of life all to her great detriment and loss.

63. As a direct and proximate result of the aforementioned act and conduct of the defendant, Plaintiff has incurred other financial expenses to which she may otherwise be entitled to recover.

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars together with delay damages, interest, costs, attorneys' fees, punitive damages, and declaratory and injunctive relief.

**COUNT V: 42 U.S.C. § 1983**
**MALICIOUS PROSECUTION**
**PLAINTIFF AGAINST INDIVIDUAL DEFENDANTS**

64. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

65. Defendants caused Plaintiff to be charged with crimes he did not commit.

66. The criminal charges against Plaintiff were dismissed and the case terminated in the Plaintiff's favor.

67. Defendants initiated criminal charges against Plaintiff without probable cause.

68. Defendants knew no probable cause existed but intentionally and maliciously pursued false charges against Plaintiff.

69. Defendants caused Plaintiff to be prosecuted for a purpose other than seeking justice.

70. Defendants made false assertions in order to justify the false arrest of Plaintiff and to support their intentional malicious prosecution of Plaintiff.

71. As a direct result of Defendants' intentional and malicious conduct, Plaintiff was seized and held on false criminal charges and suffered associated deprivations of liberty in violation of the Fourth Amendment to the United States Constitution.

72. As a direct and proximate result of the Defendants' actions, Plaintiff suffered serious mental anguish, psychological and emotional distress, fear, anxiety, embarrassment, and the loss of the enjoyment of life all to his great detriment and loss.

73. As a direct and proximate result of the aforementioned act and conduct of the defendants, Plaintiff has incurred other financial expenses to which he may otherwise be entitled to recover.

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars together with delay damages, interest, costs, attorneys' fees, punitive damages, and declaratory and injunctive relief.

### COUNT VI: 42 U.S.C. § 1983
### MUNICIPAL LIABILITY CLAIM

## AGAINST DEFENDANT CITY OF YORK

74. Plaintiff incorporates by reference all the foregoing paragraphs.

75. The City of York, by and through its final policymakers, had in force and effect during time of Mr. Matos Montalvo's arrest and trial, and for many years preceding and following the trial, a policy, practice, or custom of unconstitutional conduct in homicide and other criminal investigations, that included using coercive techniques in interviews and interrogations; fabricating evidence; fabricating incriminating statements from witnesses, suspects, and arrestees by coercion, threats, and suggestion; concealing and/or withholding exculpatory evidence; and failing to conduct a reasonably thorough and fair investigation that considered evidence negating grounds to arrest and prosecute.

76. Policymakers for the City of York had actual or constructive notice of the above practices, policies, and customs, but repeatedly failed to undertake any meaningful investigation into charges that homicide detectives were using coercive techniques in interviews and interrogations: withholding exculpatory evidence; fabricating inculpatory evidence; fabricating incriminating statements from witnesses, suspects, and arrestees; failing to conduct a reasonably thorough and fair investigation that considered evidence negating grounds to arrest and prosecute; and failing to take appropriate remedial and/or disciplinary actions to curb the above misconduct.

77. The unconstitutional municipal customs, practices and/or policies described above were the moving force behind Mr. Matos Montalvo's trial for capital murder, and the other injuries and damages set forth in this Complaint.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages against all defendants

except municipal defendants, delay damages, attorneys fees, and allowable costs of suit and brings this action to recover same.

                                          /s Brian J. Zeiger
                                          LEVIN & ZEIGER LLP
                                          BY:     BRIAN J. ZEIGER, ESQUIRE
                                          IDENTIFICATION No.: 87063
                                          1500 JFK Blvd
                                          SUITE 620
                                          PHILADELPHIA, PA 19102
                                          (215)  825-5183